## THERESA COLANGELO, ADMR.
### vs.
## JOHN M. CAMBUT

Superior Court          Litchfield County          File #9187

Present:   Hon. FRANK P. McEVOY, Judge.

Wall, Wall & Wall,          Attorneys for the Plaintiff.

David Cramer,          Attorney for the Defendant.

## MEMORANDUM FILED JANUARY 21, 1938.

McEVOY, J.  The motion sets out six reasons for setting aside the verdict.  Five of them are discussed.  The other reason merits no discussion.  Taking them up in their order:

1.  That the verdict is contrary to the evidence.

Upon the pleadings it was admitted that the plaintiff's decedent was a pedestrian on a public highway and that the defendant's agent and servant was, at that time, driving the defendant's horse and milk wagon on the business of the defendant.  There was evidence upon which the jury might reasonably have concluded that while the plaintiff's decedent was walking across the public highway, the defendant's horse—or the shafts of the wagon—struck the decedent and inflicted injuries which speedily caused his death.  It was practically undisputed that, just prior to the collision, the defendant's agent and servant, after delivering a bottle of milk to a customer of the defendant, jumped into the wagon while the horse, in his accustomed way, was walking or "jogging" along the highway and thus the driver's fingers were holding a number of empty bottles which, oblivious of the wandering of the horse, the driver was engaged in placing in their holders or "racks".  While the driver was thus engrossed the unattended horse, left to his own devices, on meeting the decedent and his pedestrian companion, "jumped up and down" or "pranced" in apparent fright or, more probably, in an attempt, by the use of his own intelligence, to avoid the collision.  The defense, during the trial, upon argument to the jury and upon argument of this motion, stressed the avoidance of danger by the companion of the decedent, apparently, upon the unexpressed

theory that the companion's act in stepping back and avoiding injury required a conclusion that the decedent was so negligent that it materially contributed to his injury and death. This does not follow, for two reasons. The first is that it is an obvious non sequitur. The second is that, under the statute, the defendant was required to and did plead the alleged negligence of the decedent and that "the burden of proof of such contributory negligence shall rest upon the defendant". Upon the whole evidence there was ample basis for the conclusion of the jury that the defendant was negligent and that the plaintiff's decedent was not,—at least, that the negligence of the deceased did not materially contribute to or become a substantial factor in causing his injuries and death.

The second reason is that the verdict is against the law.

The fourth reason is that the Court mistook the law.

In connection with these composite claims several details were referred to in the argument on this motion.

A. That the jury were told that a violation of the statute was negligence and that they were not told that the plaintiff might not recover unless it was found that the violation of the statute materially contributed to or was a substantial factor in causing the injuries to the decedent. The defendant is correct in claiming that the jury were not so instructed in those exact words. An examination of the charge, the delivery of which consumed fifty-eight minutes and which covers thirty-three pages, reveals that in the instruction as to the negligence of the decedent and of the defendant the patient, observant and attentive jury were told ten different times that negligence, in order to justify or prevent recovery, must be such "that it materially contributed to or was a substantial factor in causing the injury". This would appear to have been, at least, sufficient.

Frauham vs. Berkshire Motor Coach Lines, Inc., 115 Conn. 714.

"It was not necessary to repeat and specifically apply, in the charge, this qualification as to each statute . . ."

Smith vs. Hirschberg, et al., 117 Conn. 692, 694.

B. Complaint is now made that the jury were instructed that the plaintiff might recover for the pain and suffering of the decedent although the complaint contained no supporting allegation.

The complaint contained no specific allegation that the deceased suffered pain. It did contain three specific allegations of injury, viz.: Paragraph 4—third last line—"the plaintiff's intestate was severely injured . . .".

Paragraph 5—first line—"the injuries . . . were due . . . etc. . . .".

Paragraph 6—second and third lines—"the plaintiff's intestate received a fracture of the spine and other internal injuries . . .".

On argument of the motion the defendant rested his claim, on this phase of the matter, on **Kane vs. New Idea Realty Company, 104 Conn. 508.** In that case the distinction between general and special damages is clearly stated as follows (p. 511):

" 'All damages must be the result of the injury complained of; . . . Those which **necessarily** result are termed **general damages;** . . . The defendant must be presumed to be aware of the necessary consequences . . . and therefore cannot be taken by surprise in the proof of them . . . But where the damages, though the **natural** consequences of the act complained of, are not the **necessary** result of it, they are termed **special damages;** which the law does not imply; and therefore, in order to prevent a surprise upon the defendant, they must be particularly specified in the declaration, or the plaintiff will not be permitted to give evidence of them at the trial.' **2 Greenleaf on Evidence (16th Ed.) §254."**

It will be observed that in the latter part of this definition it was stated that the plaintiff will not be permitted to give evidence of them. Upon the trial such evidence was offered without objection and so admitted. It would seem that suffering and pain would be the necessary—as well as the natural —result of the serious injuries which ultimately caused the death of the decedent and thus, under the theory of general damages, the plaintiff would have reasonable and adequate notice of the intention to claim them and that, therefore, this phase of instructions was correct.

3. The third reason is that the verdict was excessive.

Upon the evidence it appears that the decedent had a life expectancy of 9.47 years; that although he had previously suffered from a disorder yet he was sufficiently hale and hearty to work uninterruptedly for many years; that, to the casual

observer, he appeared to be in good health; that just prior to the time of the injury which resulted in his death he was regularly employed and that the undisputed special damages amounted to $466.85. Under all of these circumstances the amount of the verdict—$2,500.00—does not seem to have been excessive. It is true that the decedent had not accumulated any estate. Evidence as to this is admissible but proof of the fact is not essential.

**Greenberg vs. Waterbury, 117 Conn. 67.**

5. In the fifth reason it is claimed that the plaintiff's counsel, on argument, appealed to the sympathy and bias of the jury and that the jury was prejudiced. The brevity of the three arguments was very unusual.

The first occupied ........................................................... 5 minutes
The second occupied ....................................................... 8 minutes
The third—and closing—argument occupied ...... 22 minutes

Total ................................................................................. 35 minutes

Each argument was terse, pertinent and pithy. All were devoid of any appeal to passion or bias.

For all of these reasons the motion to set aside the verdict is denied.